## In re CHOPAK.
### Misc. No. 573.

District Court, E. D. New York.
Nov. 24, 1941.

Harold M. Kennedy, U. S. Atty., of Brooklyn (Frank J. Parker and Nathan Borock, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for the application.

Jules Chopak, of New York City, in pro. per.

M. & S. Meyers and Harry S. Austin, all of New York City, for Ole Hansen, in support of the application.

Before CAMPBELL, INCH, MOSCOWITZ, GALSTON, BYERS, and ABRUZZO, District Judges.

CAMPBELL, District Judge.

The above named attorney was presented for discipline on a number of charges. The testimony was taken before the Senior Judge, briefs were filed and the matter brought on for hearing before all of the judges of this court.

On the final hearing we informed Jules Chopak, the attorney, that the court would confine the hearing to the two following charges: first, the charge that said Jules Chopak improperly obtained from the libellant Ole Hansen the retainer of May 25th, 1940, agreeing to pay him one-half (50%) of any recovery or settlement in the suit of Ole Hansen against Newark Terminal & Transportation Co., without the knowledge and consent of said Ole Hansen; second, that said Jules Chopak, attorney, had written to said Ole Hansen a letter informing said Ole Hansen that he had lost his case, while in truth the case had been won by him.

The suit in question had originally been instituted by Harry S. Austin, Esq., as proctor for said Ole Hansen, to recover damages for alleged personal injuries, under a written retainer, dated May 7th, 1940, wherein said Ole Hansen agreed to pay Harry S. Austin 40% of any recovery or settlement. Ex. 1.

Harry S. Austin found it necessary to obtain money and entered into the agreement with the said Jules Chopak whereby said Jules Chopak loaned said Harry S. Austin a considerable sum of money, and said Harry S. Austin took the said Jules Chopak in as an attorney, and assisted in having him substituted, with said Harry S. Austin, as attorneys or proctors for said Ole Hansen, libellant in said case.

On May 21st, 1940, the said Jules Chopak, with the assistance of Harry S. Austin, obtained from the said Ole Hansen a written retainer of Harry S. Austin and Jules Chopak as his attorneys or proctors in said suit, wherein he agreed to pay to his said attorneys or proctors, 40% of any

recovery or settlement in that case. Ex. 2.

The plaintiff Ole Hansen had a very limited knowledge of the English language, and the said Jules Chopak who knew that to be a fact, and was then a co-attorney or proctor of the said Ole Hansen, saw the said Ole Hansen and obtained from him a consent to the substitution of the said Jules Chopak as his sole attorney in that suit, displacing the said Harry S. Austin.

At the same time the said Jules Chopak induced the said Ole Hansen to sign a retainer of the said Jules Chopak as his attorney in the said suit, wherein the contingent fee of the attorney was fixed at one-half (50%) instead of 40%, as in the former retainers. Ex. 3.

There was some discussion about the knowledge of Harry S. Austin of the substitution of Jules Chopak as sole attorney, but the consent therefor was certainly signed by Harry S. Austin and also signed and acknowledged by said Ole Hansen, but we are convinced that Harry S. Austin did not know of the attempted increase of the contingent fee in the retainer from 40% to 50%.

Hansen says, and we are convinced that he is telling the truth, that he did not know that the retainer he signed was for one-half (50%) but believed it to be for 40%.

This is denied by Chopak, but his own writings within two or three weeks thereafter, certainly by July 11th, 1940, certainly do not tend to support his denial.

Chopak knew of the great confidence which Hansen had in Austin, and the influence which Austin exercised over Hansen, and although Chopak did have in his possession the 50% retainer, Ex. 3, he wrote on several occasions, subsequent to May 25th, 1940, to Austin, asking him to assist in obtaining a 50% retainer from Hansen. Why was this necessary if Chopak had properly obtained the 50% retainer from Hansen? Chopak's explanation was that he had forgotten that he had obtained the retainer.

That explanation, if offered for something done a year or more after the obtaining of the 50% retainer, might be worthy of some consideration, but it is certainly not a reasonable explanation for something done two or three weeks after the obtaining of the retainer. The fact undoubtedly is that Chopak knew he could not sustain the 50% retainer against Hansen, because Hansen did not know that the retainer was for one-half (50%), and Chopak wanted to assure himself by having Austin procure an unassailable 50% retainer for him.

The retainer in question first came to notice when presented by Chopak with other papers before the Special Commissioner about one year after it was obtained.

Further, on the question of Hansen's knowledge of the contents of the retainer, it is to be noted that in the two previous retainers the words "Forty percent" were written out and easily seen, whereas in the retainer of May 25th, 1940, Ex. 3, there were printed the words "one half (½)" and the percentage was not written out, as in former retainers, in letters that would attract attention, but the increase in the contingent fee would be discernible only on close scrutiny.

After the decision was rendered by the court in the suit in question the title of which was then Ole Hansen, Libellant, against Steamlighter "Belleville", Respondent, Newark Terminal & Transportation Co., Claimant; Jules Chopak the attorney wrote the libellant Ole Hansen that he had lost his case.

That was not true.

The attorney Jules Chopak sought to justify his position in a subsequent letter, in which he attempts to show that what he meant was in effect that the suit should never have been brought, but that Hansen should have taken compensation, and that his recovery would be so small in the suit as to amount to a loss.

Accepting, for the sake of argument, the claim in the last letter as true, it certainly does not improve Chopak's position, because he must have known from the beginning the contention he therein makes, and notwithstanding that, he sought to reduce the libellant's small recovery by increasing from 40% to 50% the amount he was to obtain.

The first letter should not have been written, but the real serious question before us is the attempt to raise the retainer from 40% to 50%.

The majority of the court deem a 50% contingent fee as ipso facto oppressive and unreasonable.

108

■ The fact that an attorney is not familiar with the branch of the law involved in a particular case, and therefore must spend additional time in preparation, does not warrant the exaction from his client of a larger retainer to cover those services.

■ Hansen was Chopak's client, and it was Chopak's duty in dealing with his client to make sure that the client knew that, in signing the retainer, he was agreeing to pay Chopak an increased fee; this, Chopak did not do, but took the retainer from Hansen without assuring himself or being able to persuade us that Hansen knew what he was doing.

Jules Chopak must be disciplined.

From the standpoint of the professional standards which this court exacts from its bar, this is a very serious matter, but there are circumstances peculiar ·to this case that we must also consider.

Chopak loaned a considerable sum to Austin, which was not repaid, and to this day that seems to have played a large part in Chopak's life. ·

Chopak is in a highly nervous condition, and this has been observed by all of us especially on the final hearing, when we attempted to hold him to a discussion of, and an explanation of, the two charges in question.

Further, there is no evidence of Chopak's using the retainer in question to exact the higher contingent fee which it provides.

We cannot contemplate with equanimity, the trading back and forth between lawyers, of a client's cause as though it were a professional asset to be sold or used as collateral by another lawyer, sufficiently affluent to advance money for the privilege of being substituted with or in place of the original attorney of record.

This proceeding presents a deplorable picture of some of the incidents of such traffic. ·

■ We find the attorney Jules Chopak guilty of the charge that he improperly obtained from the libellant Ole Hansen the retainer of May 25th, 1940, agreeing to pay him one-half (50%) of any recovery or settlement in the suit of Ole Hansen against Newark Terminal & Transportation Co., the title of which suit is Ole Hansen, Libellant, against Steamlighter "Belleville", Respondent, Newark Terminal & Transportation Co., Claimant, without the knowledge and consent of said Ole Hansen, and suspend him from practice as an attorney, proctor, counsellor, solicitor and advocate of this court for the term of four months from the date of the order to be entered hereon in the usual form.

Let the United States Attorney present such order to be settled before the Senior Judge.

All concur, except ABRUZZO, District Judge, dissenting.

ABRUZZO, District Judge (dissenting).

When Jules Chopak became the sole attorney of record, he had a perfect right to obtain a retainer running to him alone. Ole Hansen had previously signed a retainer when Harry S. Austin was the sole attorney of record; then, he signed another retainer to Harry S. Austin and Jules Chopak, when they became associated. Hansen knew that, when Jules Chopak became the sole attorney of record, a retainer would have to be signed by him to Jules Chopak.

Ole Hansen, therefore, in my opinion, knew that the paper he was signing was a retainer, in spite of his denial. The question remains, however, whether he was apprised of the fact that it was for one-half (50%) instead of forty (40%) per cent. I am not altogether convinced that Ole Hansen did not know that the retainer was for one-half (50%).

Jules Chopak's method of procedure, to say the least, was very slipshod. He could have fortified himself by having a third party witness the amount of the retainer.

The conclusion reached by me that Hansen knew he was signing a retainer to Jules Chopak precludes a finding that he was overreached.

The retainer for one-half (50%) was never used, Jules Chopak's services having been compensated on the basis of the reasonable value for same.

The charge that Jules Chopak informed Ole Hansen that he had "lost" his case was not sustained. When Jules Chopak wrote on a piece of yellow paper that Hansen had lost his case, it can be reasonably assumed that he meant that Ole Hansen had recovered less in Admiralty than his case was worth in Compensation. Jules Chopak wrote a long letter to Ole Hansen, explain-

ing what he meant by the term "lost", a few days later.

I am of the opinion that the charges should be dismissed. I, therefore, dissent from the majority opinion.